## In re REISER'S ESTATE.

No. 3547.   Decided January 14, 1921.   (195 Pac. 317.)

1.   EXECUTORS AND ADMINISTRATORS—INDEBTEDNESS OF DISTRIBUTEE MUST BE ADMITTED OR JUDICIALLY DETERMINED. Before the distributive share of an heir in a decedent's estate can be withheld on account of what he himself owes the estate, the alleged indebtedness of the heir to the estate must either be admitted or judicially determined.

2.   EXECUTORS AND ADMINISTRATORS—ROUTINE SETTLEMENTS DO NOT ADJUDICATE QUESTION OF HEIR'S DEBT TO ESTATE. The ordinary routine settlements of the accounts of an executor or administrator from time to time, as required by the code of probate procedure, do not adjudicate controverted questions between an heir of the estate and itself, as an indebtedness of the heir to the estate, to entitle the representative to retain the distributive share of the heir until he pays the debt.[1]

3.   EXECUTORS AND ADMINISTRATORS—PETITION HELD TO INVOKE JURISDICTION TO ADJUDICATE CLAIM AGAINST HEIR. Petitions

---

[1] Citing *In re Tripp's Estate*, 51 Utah, 359, 362, 170 Pac. 975, 976.

of heirs and devisees of decedent and of his administrator *held* sufficient to invoke the power of the court to adjudicate and determine the validity of the claim made against the estate of a deceased heir, alleged to have been short in his accounts as decedent's executor, etc.

4. DESCENT AND DISTRIBUTION—LIMITATION OF ACTIONS—STATUTES DO NOT PREVENT RETAINER AS AGAINST HEIR INDEBTED TO ESTATE; LIMITATIONS BAR ACTION, NOT DEBT. The statutes of limitation should not be applied to extinguish the debt of an heir to decedent's estate to prevent application of the doctrine of retainer, enabling decedent's representative to withhold the distributive share of such heir until the debt is paid; such statutes barring only the right of action, and not the debt itself.

5. EXECUTORS AND ADMINISTRATORS—ADMINISTRATRIX OF HEIR CANNOT CLAIM LACHES TO PREVENT RETAINER. Administratrix of estate of deceased son *held* not in a position to charge laches against the estate of the deceased father or the other heirs and devisees of the father to prevent the representative of the father's estate from invoking the doctrine of retainer as justification for withholding from the estate of the deceased son his distributive share in his father's estate on account of his indebtedness to the estate.

6. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO SHOW INDEBTEDNESS JUSTIFYING RETAINER. Evidence *held* to show that a deceased son, formerly executor of his deceased father's will, was indebted to the father's estate on account of sums received by him to justify the administrator of the father's estate in retaining from the estate of such deceased son his distributive share to the amount of his debt.

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin,* Judge.

In the matter of the estate of Henry Reiser, deceased, wherein the estate seeks to withhold from the estate of Albert S. Reiser, deceased, a distributive share. From judgment adverse to the claimant estate, it appeals.

AFFIRMED.

*L. L. Bagley* and *D. H. Thomas,* both of Salt Lake City, for appellant.

*Booth, Lee, Badger & Rich,* of Salt Lake City, for respondent.

THURMAN, J.

This proceeding involves a controversy between the estate of Henry Reiser, deceased (hereinafter called respondent or respondent estate), and the estate of Albert S. Reiser, deceased (hereinafter called appellant or appellant estate).

Respondent seeks to withhold from appellant a distributive share of respondent estate on the alleged ground that appellant is indebted to it for money wrongfully converted.

A brief chronological statement of the facts at this point will assist the reader in understanding the questions involved. Henry Reiser died in July, 1904. He left a will, two widows, and numerous children. His wife, Margaritta, his son Albert S., and Arnold G. Giauque were named in the will as executors. He left considerable property, both real and personal. His son Albert S. transacted practically all of the business of the estate. The other executors gave it little or no attention. In July, 1911, Albert died. No accounting of the business of the estate had ever been rendered. Upon petition of the surviving executors in August, 1911, one Orson Rumel was appointed as a competent accountant to audit the books and accounts of the estate. The auditor made his report, which showed a deficit of $19,180.50 in the account of Albert, as executor, in his dealings with the estate. This amount is charged in the auditor's report as a claim against appellant. In the meantime Nellie H. Reiser, widow of Albert, was appointed as administratrix of appellant estate. Shortly after the coming in of the report of the auditor and surviving executors of respondent estate, some of the parties interested in that estate petitioned the court to remove the surviving executors on account of their negligence and inattention to the business of the estate. A hearing was had

upon the petition and the executors were removed. The
report of the auditor and the surviving executors showing
the alleged deficit was filed in January, 1911, and was the
first accounting ever rendered by any of the executors. A
second account was filed in September of the same year in
which the alleged deficit again appeared. In each case it
appeared as a charge against appellant, and the account after
a hearing thereof was allowed. The apparent shortage in the
account of Albert, as executor, figured prominently in the
proceeding for the removal of the surviving executors. In
fact, it undoubtedly was the moving cause for the proceeding
which resulted in their removal. About this time a claim was
formally presented by respondent against appellant for the
amount above named. The claim was not allowed, but the
record does not show that it was affirmatively disallowed.
The final account of the surviving executors before turning
over the business to their successors was filed in January,
1913, in which the deficit again appeared as a claim against
appellant. The account was allowed, settled, and approved.
The surviving executors were succeeded by one Harry
Haynes, as administrator with the will annexed. Haynes, in
April, 1914, by petition to the court represented that he had
been advised by his attorney that the claim against appellant
could not be collected as the statute of limitations had run
against it. He also represented that he had been informed
that the property of appellant was insufficient to pay said
claim, and it was not worth while to incur the expense of
trying to collect it, and he requested the court for instruction
what to do. No instructions were given. About this time
there appears to have been a petition for a partial distribu-
tion of respondent estate, and objections were filed by some
of the parties interested to the appellant participating in the
distribution. Nellie H. Reiser, administratrix of appellant,
filed answer to these objections March 30, 1915, in which she
denied that Albert S. Reiser prior to his death became in-
debted to the respondent in the sum claimed, or in any sum
exceeding $100 on a certain promissory note to Henry Reiser
dated in 1904. She therefore prayed that the share of the
respondent estate to which Albert Reiser would have been

entitled be distributed to his estate. Nothing further appears of record relating to this proceeding. The answer of Nellie H. Reiser, above referred to, is the first affirmative repudiation of the claim against the appellant which we have been able to find in the record. Nor have we been able to find that the claim was ever admitted by her in any manner or form, unless her failure to file formal objections in previous proceedings may be deemed an admission.

Before concluding this statement it may be said, once for all, that in all of the proceedings referred to where there was a hearing in court such notice as is ordinarily given in a probate proceeding was given to all the parties interested in respondent estate, including Nellie H. Reiser, administratrix of appellant.

This brings us to the proceeding now under review. Harry Haynes, administrator of respondent, having died, was succeeded by John Vetterli, who is now acting as administrator of respondent estate. Vetterli, as administrator, and the devisees and legatees of the estate, filed separate petitions for partial distribution of respondent estate and prayed that the administrator of appellant be required to account for the things done by Albert S. Reiser, as executor of respondent, and that the administrator of respondent be directed to retain the interest of appellant and apply the same on the amount owing by appellant to respondent. The petition of the legatees under the will is full and comprehensive. It recites practically all the matters referred to in the foregoing statement of facts and makes the claim against appellant the basis for an accounting and also for the "right of retainer" prayed for in the petition. Nellie H. Reiser, as administratrix of appellant, demurred to the petition on the ground that the court was without jurisdiction, and also that the facts stated were insufficient to entitle petitioners to relief. The demurrer was overruled. She then filed an answer in which she denied that appellant is indebted to respondent, admitted that no accounting had been had, and alleged that none had ever been requested. The answer further alleged that she has at all times been deprived of the custody, control, and care of the papers, vouchers, property, and assets of the es-

tate, and that she has never been given the opportunity of making an examination of the papers and documents which were in the hands of Albert at the time of his death; that more than eight years have elapsed since Albert's death, during all of which time the papers and documents have been under the control of other persons. She pleads laches on the part of respondent and parties interested and also the statute of limitations in bar, referring especially to Comp. Laws Utah 1917, §§ 6467, 6468, 6474 and 7648. She prays that the estate she represents be allowed its distributive share of the Henry Reiser estate.

The court, to whom the case was tried without a jury, found the issues in favor of the petitioners and directed the administrator to apply the distributive share of appellant to the payment of the indebtedness due respondent. Judgment was accordingly entered. The administratrix of appellant estate appeals from the judgment and for a reversal thereof relies upon several assignments of error which will now be considered.

Appellant contends that the judgment is erroneous because: (1) The claim was never admitted or adjudicated; (2) it was barred by the statute of limitations; (3) it was barred by laches; (4) it was not established by the evidence.

1. "The claim was never admitted or adjudicated." Under this head the appellant discusses the doctrine of "retainer" as the same is understood in the administration of the estates of decedents, and furnishes us with the following terse definition of the term:

"Where an heir owes the estate a sum of money, he should not participate in the distribution of the assets of the estate until he has paid what he owes."

Appellant accepts this as a wholesome doctrine, but insists that in the instant case the question is: Does Albert S. Reiser, or his estate, owe respondent the amount claimed, or any amount? It is contended by appellant that the alleged indebtedness must either be admitted or judicially determined before the interest of the heir can be retained and applied in payment of the debt. We are inclined to the view that ap-

pellant is right in this contention. It must be true under our system of jurisprudence that before any person can be deprived of his right to property there must either be an admission on his part that for some reason he is not entitled to insist upon his right, or there must be a judicial determination. Respondent contends, however, that there has been an adjudication of the question by the various proceedings had in probating the estate, which we have heretofore enumerated, and also by the judgment in the present case. We are therefore confronted in the beginning with the question whether or not the allowance, settlement, and approval of an executor's accounts, as the same ordinarily occur from time to time during the probate of an estate, can be considered as an adjudication of the claim against an heir so as to permit the "right of retainer" to be applied in liquidation of the claim. It is quite true that the appellant estate during all of the proceedings referred to was an "interested party" and as such had notice and was bound to a certain extent by the orders made and judgments rendered. These proceedings were had to determine the financial condition of the estate, as between the executors and the estate as a whole. That much is clear. When the account after due notice of the hearing was settled, approved, and allowed by the court, the executors were entitled to whatever credits were allowed, and it did not lie in the mouth of an interested party to say that such matter had not been judicially determined. If the settlement and allowance of an executor's account, under such circumstances, is not a judicial determination, then there is no such thing as a judicial determination in probate proceedings. But this does not answer the question presented here. The question is: Does the ordinary routine settlements of the accounts of an executor or administrator, from time to time, as required by the code of probate procedure, adjudicate and determine controverted questions between one of the heirs and the estate itself? In other words, where it is claimed by the executors that an heir is indebted to the estate, and the claim is controverted by the heir, can it be said that the heir has had his day in court

except in a proceeding wherein he is directly charged and in some manner called upon to account? Is the ordinary filing of accounts by executors and administrators, as required by law, and the settlement and allowance thereof upon due notice and hearing, such a proceeding as will amount to a judicial determination of the claim? Without denying the power of the district court to hear and determine a question of this kind, even when exercising the powers of a probate court, we feel compelled to hold that there should be some appropriate pleading to invoke the jurisdiction and power of the court.

In a very recent case decided by this court, *In re Tripp's Estate,* 51 Utah, 359, 362, 170 Pac. 975, at page 976, the court after quoting Comp. Laws Utah 1917, § 3918, said:

"We are not prepared to say, and do not decide that under our state Constitution and statutes, the district court, sitting as a court of probate, has not the power and jurisdiction to hear and determine all matters involving partnership relations between the surviving and deceased partner. However, we are convinced beyond any doubt that in the matter at bar the court had no jurisdiction, in view of the foregoing statute, to order or decree a final settlement of the partnership affairs as between the surviving partner and the deceased partner's estate without any accounting with the administrators and without the necessary facts being presented to the court in a proper manner. As pointed out, no accounting or settlement of partnership affairs was had by the surviving partner with the administrators in compliance with the foregoing statute, nor were there any proper pleadings before the court whereby the equity powers of the district court, sitting as a court of probate, or otherwise, might be legally invoked, and proper findings on which any valid decree of a final settlement of partnership affairs could be predicated."

There seems to be no reason, under our Constitution and laws, why a district court in a probate proceeding may not when necessary to a due administration of an estate exercise powers which ordinarily pertain to equity jurisdiction so that the business may proceed without interruption or unnecessary delay. But, as suggested in the excerpt quoted from the case referred to, in such case the pleadings should be such as to warrant the exercise of the power. In this case, as we understand the record, as far as the proceedings in

the settlement of accounts were concerned, they were insufficient to confer jurisdiction upon the court to adjudicate the claim in question as between the two estates.

However, it is contended by respondent that in any event the claim in question was adjudicated in the case at bar and judgment rendered in favor of respondent.

Assuming for the present that the pleas of laches and the statute of limitations which is yet to be considered should not prevail, it becomes necessary to examine the pleadings in the instant case, and in the light of what has already been said determine whether or not the court had the power to enter the judgment.

The petition of the heirs and devisees of respondent estate for partial distribution alleges all the facts heretofore recited by us near the beginning of this opinion. It alleges the shortage in the account of Albert; that he advanced to himself during his lifetime the sum of $19,180.58; that his estate is insolvent and that no recovery can be had against it for said amount, or any amount, and that said amount is more than twice as much as he would be entitled to as a distributee of the estate. The petitioners pray, among other things, that the court fix a time for hearing the petition; that the court ascertain the number of heirs interested in the estate; that it ascertain the amount Albert S. Reiser advanced to himself from the assets of the estate of Henry Reiser; that it ascertain the sum of amount, if anything, now due the Henry Reiser estate from the estate of Albert S. Reiser and whether or not his estate is entitled to a distributive share in any amount in the estate of Henry Reiser; that the administrator of the estate of Henry Reiser be ordered to retain and apply any right, title, or interest the estate of Albert S. Reiser may have in the Henry Reiser estate on any indebtedness owing by the estate of Albert S. Reiser to the Henry Reiser estate. Petitioners pray for general relief.

The petition of the administrator John Vetterli is equally full and comprehensive, and in addition prays specifically that the administrator of the estate of Albert S. Reiser be ordered and required to make an accounting of the things

done by Albert S. Reiser as executor of the estate of Henry Reiser in the matter of his execution of them as such executor. The petitioner also prays that the interest of the Albert S. Reiser estate in the estate of Henry Reiser be retained to apply on the indebtedness to said last-named estate.

To both of these petitions Nellie H. Reiser, as administratrix of the estate of Albert S. Reiser, filed demurrers and afterwards filed answers in which she denied the indebtedness and pleaded laches and the statutes of limitation.

There can be no doubt whatever as to the sufficiency of the pleadings to invoke the power of the court to adjudicate and determine the validity of the claim made against the estate of Albert S. Reiser.

2. Following the order of appellant's brief, we shall next consider appellant's plea of the statutes of limitation. Appellant relies on every statute possibly applicable found in either the civil or probate code of procedure. The discussion may be limited by conceding that the action is barred if there is any statute applicable to a case of this kind. Appellant concedes that statutes of limitation do not apply in favor of an executor or administrator as long as he holds his position as such. It is contended, however, that this rule is changed whenever such relation is terminated by death or otherwise. Applying this doctrine to the instant case, it is conceded that if Albert S. Reiser, executor of his father's estate, had lived and continued to hold that position, the statutes of limitation could not have been invoked. But the record discloses that Albert died in July, 1911; that his trust relation was thereby terminated; that an administratrix was appointed for his estate in the same year; that the statutory notice was given to creditors, and the appellant contends that the statutes of limitation were thereby set in motion against the right sought to be enforced in this case. In this connection appellant cites the opinion of the court in *McGrath* v. *Carroll*, 110 Cal. 79, 42 Pac. 466, which holds that the period of limitations begins to run upon the first publication of notice to creditors. Appellant also quotes a lengthy excerpt from 18 Cyc. at page 1120, and from *Salmon* v. *Wynn*, 15 A.

& E. Ann. Cas. 481. These authorities support the position that the statutes of limitation do not run in favor of a personal representative during the existence of the trust relation, but do begin to run when the relation is terminated.

Respondent insists that the statutes of limitation have no application to the present case; that respondent is not seeking an affirmative remedy by this proceeding; that it is only claiming the right to retain the share that appellant would be entitled to if it were not indebted to respondent estate. In other words, respondent invokes the "right of retainer" as known and applied in the settlement of estates of decedents.

In *Holmes* v. *McPheeters*, 149 Ind. 587, 49 N. E. 452, the court speaking of the right of retainer said:

"This right is not one of set-off, but is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee or legatee, until the latter has discharged the obligation which he owes to the estate. The heir or legatee, as the authorities affirm, is not, in accordance with justice or good conscience, entitled to be awarded and receive his share as long as he is a debtor to the estate, and thereby has in his own hands a part of the fund upon which the payment of his own share and the shares of others depend."

See, also, *New* v. *New*, 127 Ind. 576, 27 N. E. 154.

In 1 A. L. R. at page 1007, in the note, it is said:

"The cases are in conflict upon the question whether there is a right of retainer in respect of debts which have become barred by the statute of limitations. The weight of authority, however, is to the effect that the amount of the statute-barred debt may be applied by the executor, or administrator, in satisfaction of the debtor's legacy, or distributive share. This is upon the theory that the statute of limitations bars only the right of action, and not the debt itself, and therefore that, where property of the debtor comes into the hands of the creditor, the statute does not preclude his appropriating such property to the payment of the debt."

The annotator cites cases from Alabama, Georgia, Illinois, Iowa, Kansas, Missouri, New York, South Carolina, Vermont, and England; contrary, cases from Maine, Massachusetts, Nebraska, Ohio, Pennsylvania, and Tennessee.

We also quote the following from the same note, at page 1000:

"Except in Louisiana, where the matter is regulated by statute (*Flower* v. *Myrick*, [1897] 49 La. Ann. 321, 21 So. 542), the right of retainer is not confined to debts owing to the decedent in his lifetime; but, in accordance with the equitable principle upon which such right is based, extends to the case of an indebtedness to the estate incurred after the decedent's death."

In support of this proposition cases are cited from 13 states of the Union, and also from England and Canada. We are referred to no authorities to the contrary.

After a careful review of many of the authorities cited, we find no difficulty in arriving at the conclusion that the statutes of limitation relied on by appellant should not         4 be applied in a case of this kind.   This, upon the theory stated in the excerpt quoted from page 1007, 1 A. L. R., that—

"The statute of limitations bars only the right of action, and not the debt itself, and therefore that, where property of the debtor comes into the hands of the creditor, the statute does not preclude his appropriating such property to the payment of the debt."

Assuming it to be an established fact that Albert S. Reiser in his lifetime became indebted to the estate of Henry Reiser, and that he died leaving the indebtedness a subsisting obligation, it does seem inequitable and unjust from every point of view to hold that his estate should be permitted to enjoy an equal share in the distribution of the Henry Reiser estate while withholding therefrom a portion of the assets from which the distribution should be made.   It therefore ought not to be a matter of surprise to find that the overwhelming weight of authority, both in this country and in England, holds that statutes of limitation may not be invoked in a case where the right of retainer is involved.

3.   But appellant insists that if the action was not barred by the statutes of limitation, in any event it was barred by laches.   It must be conceded that there are many features of the case which ordinarily would justify a court of equity in applying this doctrine.   First, we have the death of Albert

in 1911. He alone transacted the business of his father's estate which at that time had covered a period of seven years. He alone kept the books and accounts relating to the business. It does not appear that Arnold G. Giauque or Margaritta Reiser, the surviving executors, knew anything about the business, except that Margaritta collected some of the rents and turned the money over to Albert, taking his receipt. Even if Arnold G. Giauque had known anything about the business, he was unavailable as a witness, for he also died before the trial of the case. Henry Haynes, administrator with the will annexed, who succeeded Giauque and Margaritta in administering the estate, also died before the trial. It does not appear that Nellie H. Reiser, administratrix of appellant, knew anything concerning her husband's conduct while acting as executor of respondent estate. Besides all this, it appears that the surviving executors, Giauque and Margaritta, together with Orson Rumel, the accountant, shortly after the death of Albert, called upon Nellie H. Reiser, the widow of Albert, and procured from her all the books and papers she could find relating to the respondent estate. She testified that the books and papers were never returned to her. There is, however, testimony to the effect that a large portion of them were returned and that some that were considered of no importance were burned. These are the principal features upon which appellant relies in support of the plea of laches. It appears, however, from her own admission while a witness on the stand, that she never at any time made any request to examine the books and accounts in question. Notwithstanding she must have known of the report filed by Orson Rumel and the surviving executors Giauque and Margaritta, in January, 1912, showing a shortage in Albert's accounts, she seemed to manifest no concern. The same condition was reported by Giauque and Margaritta in the account filed in September, 1912, and also in their final account filed in 1913. All of these accountings were allowed, settled, and approved, and as representative of her husband's estate, which was a party interested in the respondent estate, it must be conclusively presumed that she

knew and understood the nature of the accounts that were filed and that they charged her husband with a deficit which sooner or later would have to be accounted for by her as his representative, especially if she expected his estate to eventually become a distributee of respondent estate. Still she made no request to examine the accounts or have them examined by some person whom she might select. Furthermore, she knew as early as 1911 that a formal claim had been presented to her against the estate she represented for the amount of the alleged indebtedness. Still she made no protest nor filed any objection until 1915, when a proceeding was instituted for partial distribution of respondent estate in which it was sought to retain the share of appellant estate as a partial liquidation of the indebtedness charged against it. She then filed an answer and for the first time, as far as the record discloses, denied the indebtedness. Even then no request was made for an examination of the books and accounts. The report filed by Rumel showed on its face that her husband had received money from the estate of his father for which the books and accounts of her husband afforded no explanation. She must have known when it was shown that money belonging to his father's estate had come into her husband's hands the burden was upon the estate she represented to account for the proper expenditure of the money thus received.

Under all the circumstances of the case we are of the opinion that the administratrix of the appellant estate is not in a position to charge laches against either respondent or the other petitioners. Besides this, it does not appear from the record when Rumel and the surviving executors entered upon their investigation as to the condition of respondent estate that they were confronted with serious or embarrassing problems. The estate consisted of real estate, bank stock, stock in mercantile and industrial institutions, shares in Zion's Benefit Building Society, promissory notes, book accounts, and stock in the jewelry business carried on by Henry Reiser at the time of his death. The whole estate in the net inventory amounted to $33,733.62, to

which a later inventory added the sum of $8,588.01. These, together with amounts received as interest, rent, dividends, and sale of shares in the building society prior to Albert's death, as shown by the report of Rumel and the surviving executors, aggregate the sum of $76,015.79. This is the aggregate of the items with which the executors were charged. They are credited with $19,214.99 disbursed as per vouchers attached to the report and, by $37,620.22 residue of the estate on hand, leaving a balance of $19,180.58 unaccounted for and unexplained. This amount is charged in the report against the estate of Albert for the reason that it appears that he alone received money. This is the sum which is now sought to be retained in the distribution of respondent estate. Rumel testified that his report was based entirely upon documents and vouchers furnished him by the surviving executors, and the report itself indicates that the vouchers were filed with the report. The report shows the names of the persons, firms, and corporations with whom the business of the estate was transacted and the sources from which the money was received. Practically all of these persons, firms, and corporations reside in Salt Lake City and were easily accessible to the administratrix of appellant estate had she desired to check up or verify Rumel's report. This was clearly demonstrated at the trial of the case. Several witnesses, persons connected with the firms and corporations referred to, were called by respondent and were able to verify the correctness of the auditor's report as to the money received by Albert on account of his father's estate.

There is no merit in the plea of laches.

4. Finally, appellant contends that the claim against the appellant estate was not established by the evidence. To this contention but little need be added to what has already been said. At the trial Orson Rumel was called as a witness and testified that he had had in his possession at the time of making his report vouchers for the items upon which the report was based; that the books, papers, and accounts were turned over by him to Mr. Haynes' attorney, when Haynes was appointed administrator, and witness never saw them after-

wards. He testified that he had examined the original documents, vouchers, checks, and receipts for dividends paid to the estate by various companies in which the estate owned stock. The documents showed, in nearly every case, that the money was paid to Albert. In one or two instances it was paid to Giauque, and some of the rents were paid to Margaritta, but in such cases the money or checks were turned over by them to Albert. Other than these instances there was no evidence that Giauque or Margaritta received or paid out any money of the estate. Witness' determination was made from the receipts and checks. The checks were indorsed. This seems to have been, generally, the character of evidence upon which the court made its findings as to the money received by Albert. It was conclusively established by the evidence that the books and documents were lost after Haynes became administrator of the estate. The testimony of Rumel, however, was corroborated by George Chambers, assistant secretary of the Consolidated Wagon & Machine Company, W. S. Romney, treasurer of Zion's Co-operative Mercantile Institution, W. W. Bateman, secretary of Zion's Benefit Building Society, Arthur J. Wood, accountant of the Utah-Idaho Sugar Company, and others. These witnesses testified as to the checks for dividends drawn by their respective companies in favor of the respondent estate. The checks were introduced in evidence showing indorsement by Albert S. Reiser, whose signature was identified and established. By this means and by means of receipts given by Albert, it was clearly shown that the money came into his hands. The amount distributed by him on account     6 of the estate was shown, leaving a shortage in his account of the amount now sought to be retained by respondent.

We do not see how the trial court could have arrived at any other conclusion than the one reached. When it was shown that the money and property were received by Albert and no evidence introduced as to how or for what purpose it was disbursed, if it was disbursed, the only thing the court could do was to hold his estate responsible. This the court did, and in so doing it committed no error.

The judgment of the trial court is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.