In re McLAREN'S ESTATE

McLAREN v. McLAREN et al.

No. 6176.   Decided October 25, 1940.   (106 P. 2d 766.)

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellant.

*L. F. Anderson,* of Park City, for respondents.

MOFFAT, Chief Justice.

This action originated over the proceeds of a life insurance policy issued by the Equitable Life Assurance Society on the life of Robert H. McLaren.

Robert H. McLaren, up to the 21st day of October, 1935, was the holder of and carried the policy. On the date indicated, Robert H. McLaren, at Park City, Utah, signed

in the presence of a notary public and delivered to the notary an assignment and directed delivery to be made to Aurelius Minor McLaren, the assignee. The record discloses delivery was made October 24th, 1935, to Aurelius Minor McLaren. After the assignment Robert H. McLaren died. G. M. Archer was appointed special administrator. The insurance company paid the proceeds of the policy to the special administrator. The check was made payable to "G. M. Archer, special administrator to the estate of Robert McLaren, deceased, and Aurelius Minor McLaren." Subsequently Archer was appointed the regular administrator. The document because of which the administrator admits and the assignee claims title and right to the insurance carried by the deceased is as follows:

"Form of Collateral Assignment
*"To be attached to and retained with the policy* for use as evidence when required.

"For One Dollar, to *him* in hand paid and other valuable considerations (the receipt of which is hereby acknowledged) hereby assign, transfer and set over Policy No.———— on the life of *Robert H. McLaren* issued by

"The Equitable Life Assurance Society of the United States with all rights therein, and with all money now or hereafter due or payable thereon, and all dividens, options, benefits or advantages derived therefrom, including the right to surrender said policy at any time and to receive and receipt for the surrender value thereof, to *Aurelius Minor McLaren* whose P. O. address is *1549 South West Temple Street, Salt Lake City, Utah* unless and until the interests of said assignee be duly released in writing and a copy thereof filed with said Society; and ———— do also for ———— executors and administrators, guarantee the validity and sufficiency of this assignment to the assignee named therein, ———— executors, administrators and assigns, and ———— title to said policy, will forever warrant and defend.

"Provided, however, and it is understood and agreed, that this assignment is to secure the repayment of the sum of ———— Dollars to the said ———— and that upon such repayment said assignee, ———— executors, administrators or assigns, will release the interest hereby conveyed.

"In Witness Whereof, *I* have hereunto set *my* hand—and seal—this 21st day of October, 1935.

"State of *Utah* ⎫
County of *Sum-* ⎬ ss.  (*Robert H. McLaren*)
    *mit* ⎭              (seal)

"On this *21st* day of *October, A. D. 1935* in the year of our Lord *1935*, before me personally came *Robert H. McLaren* to me known to be the individual—described in and who executed the foregoing assignment, and acknowledged that *he* executed the same.

"(Notary Sign Here)                    (*L. F. Anderson*)
                                       (Notary Seal)

"Note: When signed by a Corporation, corporate acknowledgment on reverse side hereof must be furnished."

The administrator having obtained the proceeds of the life insurance policy, and believing the assignee entitled to the full amount of the proceeds of the insurance policy, petitioned the court for authority to turn over the proceeds to the assignee. Due notice of the hearing upon the petition was given.

To the petition a demurrer and an answer and objections were filed on behalf of Thomas S. McLaren, a brother and heir at law of Robert H. McLaren, deceased.

The answer put in issue the validity of the assignment upon the ground that the instrument purporting to be an assignment was made to secure the payment of a debt, that no debt was created or existed or if there had been a debt it had been paid before the death of the insured Robert H. McLaren, deceased.

The hearing of the petition was duly noticed according to the procedure in the probate practice. The matter came on for hearing pursuant to the setting upon the regular probate calendar. Objection was then raised by counsel for contestants, challenging the right or jurisdiction of the court on the ground "that it is an effort in a probate proceeding to quiet title to certain property of the estate" and that protestants were entitled to have the matter heard in a plenary action.

At the hearing upon the petition, answer and objections, the court stated that the petition served as a complaint and

the answer, objections of the protestants and any other objections protestants desired to read into the record would be considered as forming the issues in a plenary action. The court stated, "this is a plenary action."

The record shows there is an unreported discussion between the court and counsel, after which the court proceeded, evidence was presented and the cause submitted to the court for decision. Findings were proposed and submitted on behalf of both the petitioner and the protestants.

Protestants appeal. The following questions are submitted to this court:

(1) Did the court have jurisdiction to hear and determine whether the administrator should turn over to Aurelius Minor McLaren the proceeds of the life insurance policy? As a matter of jurisdiction the question must be answered in the affirmative. The question implies a matter of procedure and not one of jurisdiction. (The matter of procedure will be later considered.)

(2) Are findings of fact numbered "5" and "6" contrary to or inconsistent with the finding of fact numbered "3"? This question must be answered in the negative.

All the findings are consistent with and supported by the evidence. The argument of conflict is based upon the construction placed by counsel upon the insurance policy assignment. The assignment is quoted in the finding No. 3. The trial court drew conclusions of law from the assignment and construed it differently than counsel for appellant. We agree with the court's construction. So construed there is no conflict.

(3) Did the court err in entering judgment awarding to Aurelius Minor McLaren the proceeds of the life insurance policy?

We are of the opinion no error was committed in this regard.

All of the heirs including Aurelius Minor McLaren were served with notice of the hearing of the petition. The court had jurisdiction of the administrator and of the estate. The protesting heir or heirs voluntarily appeared and sought the judgment of the court as to whether the proceeds of the insurance policy should, by the administrator, be turned over to Aurelius Minor McLaren.

The contestants, and any other heirs who voluntarily or otherwise appeared and sought the judgment of the court, submitted themselves to the jurisdiction of the court as far as they were concerned with the issues upon which they sought the judgment of the court.

Whether Aurelius Minor McLaren was served otherwise than by notice to all the heirs the same as those who appeared as contestants, is not disclosed. He neither filed nor signed any pleadings in the proceeding as assignee or otherwise nor were any signed by an attorney as counsel for him until after the hearing. As an heir he was served with notice by mail, and the bill of exceptions settled by the trial court lists the attorney for the estate as appearing for the assignee, and such attorney as attorney for both the administrator and the assignee stipulated to the settlement of the bill of exceptions.

Section 102-14-17, Revised Statutes of Utah, 1933, provides:

"All issues of fact joined in probate and guardianship proceedings must be tried in conformity with the requirements of the code of civil procedure, and in all such proceedings the party affirming is the plaintiff, and the one denying or avoiding is the defendant. Judgments therein, on the issues joined as well as for costs, may be entered and enforced by execution or otherwise by the court as in civil actions."

Again we say, the record shows that there was an unreported discussion between the court and counsel, after which evidence was presented and the cause was submitted to the court. The transcript settled by the trial court as

and for a bill of exceptions, twice recites that the proceedings were "In Probate."

Based upon the oral decision of the court, proposed findings of fact, conclusions of law and judgment were submitted by both parties to the court. Is such procedure authorized by the Probate Code? The court when exercising its probate powers is bound by the procedure and limitations of the Probate Code. The probate procedure is designed for the determination of uncontested matters and is usually an ex parte proceeding.

That probate court as such, is limited in its procedure, to the determination of uncontested matters is generally recognized. In the case of *Hampshire* v. *Woolley*, Judge, 72 Utah 106, 269 P. 135, it was held that under the provisions of Secs. 7733 and 7734 of the Probate Code, Compiled Laws of Utah, 1917, now Section 102-11-18 and 102-11-19, Revised Statutes of Utah, 1933, the court when sitting in probate is not given power to hear and determine title to property where the same is held under claim of title. Section 7733, supra, now 102-11-18, supra, specifies the procedure to require a person suspected of having taken wrongful possession of property belonging to an estate to appear and submit to an examination touching such matters. Neither the Hampshire v. Woolley case nor the statute require that a new and independent action must be commenced to determine issues relating to adverse claims of an estate. What is required is that all such disputed matters be heard and determined by the court according to the provisions of the Code of Civil Procedure.

In a probate proceeding the party in a representative capacity must stand before the court free from pledges and commitments with no advantages or handicaps. The proper procedure therefore, when a contested question arises in a probate proceeding involving the determination of disputed facts, is to strike the matters from the probate calendar and transfer it to the calendar of civil cases to be heard and determined as a contested civil matter.

But if the parties come before the court with the issues defined and are ready to proceed, and no objections are made to the matter being heard, and the court in the hearing follows the rules of practice in contested civil actions, the court is not in its nature changed nor its jurisdiction affected, because it proceeds according to the rules applicable to a cause under another prescribed procedure. This statement assumes that no objections are made, that the pleadings sufficiently define the issues, that no request for a jury has been made or is waived, and no delay is desired. Under such circumstances the making of a formal order of transfer from one calendar to another does not change the nature of the proceeding nor affect the rights of the parties.

The matter of transferring a cause from the probate calendar to a civil calendar in the same court is not a matter of jurisdiction but one of procedure. The relief and the rights which may be involved or to which the parties may be entitled are based upon and measured by the established rules of procedure. Had appellants claimed they had not been properly served or had they appeared for a special purpose or had they claimed the issues were not properly before the court, or that they were hastily summoned, or were unprepared for the trial, or had they indicated that they desired a jury trial upon the issues or assigned any other pertinent reasons for objecting to proceeding other than that of jurisdiction the court would or should have continued the cause to be tried at a time and according to the requirements of the Code of Civil Procedure.

Except as indicated no request was made. No error is assigned or argued with respect to the overruling of the objection to the introduction of evidence. Proceeding to hear the cause without objection after consultation with the court is deemed a waiver of the objection to the hearing. The proceedings were apparently regular. There is no suggestion that any one's rights were

affected or any one prejudiced, because the court proceeded to hear the cause as it did.

In view of the construction of the assignment of the insurance policy made by the trial court, with which we have indicated our agreement, a retrial would reach the same result. It therefore follows that the judgment should be affirmed. Such is the order. Respondents to recover costs.

LARSON and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur. If the matter had gone against the assignee it may be that he might have shown that he was not personally served as required in a civil suit and therefore had not his day in court. He was served as an heir by a mailed probate notice, but he was not served as a party. He, however, prevails and does not object that he was not properly in court as assignee. The appellant appeared personally, therefore he cannot object that he did not have his day in court nor can he claim a new trial because his successful adversary was not properly served. The adversary adopts the judgment in his favor as assignee by making no objection and joining issue on appeal.

I shall now take this opportunity to collate the Utah cases on a subject which seems to have given this court much difficulty and resulted in a conflict of decisions. The Utah cases are: *Garr* v. *Davidson,* 25 Utah 335, 71 P. 481; *In re Reiser's Estate,* 57 Utah 434, 195 P. 317; *In re Tripp's Estate,* 51 Utah 359, 170 P. 975; *Gee* v. *Baum,* 58 Utah 445, 199 P. 860; *In re Agee's Estate,* 69 Utah 130, 252 P. 891, 50 A. L. R. 641; *In re Thompson's Estate,* 72 Utah 17, 269 P. 103; *Hampshire* v. *Woolley,* 72 Utah 106, 269 P. 135; In *re Estate of Rogers,* 75 Utah 290, 284 P. 992.

*In re Thompson's Estate,* supra, [72 Utah 17, 269 P. 109], directly held that an action, apparently addressed to the probate side of the court if judged by its caption, could

be considered as addressed to the non-probate side of the court when it was not properly a subject for probate jurisdiction and the necessary allegations were set out to show a cause of action entertainable by the non-probate division of the court. Said the court:

"* * * The petition as filed was entitled 'In the District Court of the Third Judicial District in and for Salt Lake County, State of Utah.' In such particular it was entitled as any independent action would have been. The cause, however, was entitled 'In the Matter of the Estate of Ezra Thompson, Deceased'; but the real parties to the cause were the state treasurer on the one side and the heirs of the deceased on the other. The issues and controversy as presented by the petition and the answer thereto were between such parties, and were entertained, tried, and determined as an equitable action, and as completely as though the state treasurer had been styled the plaintiff and the heirs the defendants in the cause. The powers exercised by the court in the cause, the procedure adopted, and all of the rights and remedies accorded the parties, were the same as, and no less or different than, had the parties been designated the treasurer as plaintiff and the heirs as defendants in the cause. Thus, looking at substance and not to mere form, the cause as between the parties may well be regarded as one in equity and as it was entertained and tried by the court. In such view it may well be considered that the court had jurisdiction, not only of the parties, which is not disclaimed, but also of subject-matter."

The case of *Hampshire* v. *Woolley* supra [72 Utah 106, 269 P. 137], is seemingly in conflict with the Thompson case. There, all the parties were before the court and the pleadings presented the same issues as would have been presented in an action addressed to the civil side of court. But the trial had not taken place and a writ of prohibition was sued out in this court. This court there said:

"A person's rights and the relief which he may be entitled to are based upon and measured by the established rules of law and procedure. The court may have jurisdiction over the subject-matter and of the parties, and still the judgment or decree be void, because the procedure employed by the court was such that the court was not authorized to exert its power in that way."

Were it not for some language in Hampshire v. Woolley, it might be reconciled with the Thompson case in thus wise: The Thompson case came up on appeal. It had been fully tried with all parties before the court. In the Hampshire case a writ of prohibition was sued out before trial. But in the Hampshire case it was said that the

"court may have jurisdiction over the subject-matter and of the parties, and still the judgment or decree be void, because the procedure employed by the court was such that the court was not authorized to exert its power in that way"

and this court thus implied that, had the lower court proceeded, the decree would have been void. Apparently it was held that there was no jurisdiction to try the case in probate and that the proceedings, therefore, were void and thus prohibition lay. This I think was error and in conflict with the other Utah cases. Under the more liberal use of a writ of prohibition as suggested in *Atwood* v. *Cox,* 88 Utah 437, 55 P. (2d) 377 and the opinion of the writer in *Adolph Coors Co.* v. *Liquor Control Commission,* 99 Utah 246, 105 P. (2d) 181, this court could have stopped the lower court at that stage and instructed it to require the parties to address their petition to the civil side of the court in the interest of more orderly procedure. But it should not be done on the grounds of lack of jurisdiction. Certainly the Hampshire case would appear to be in conflict with the Thompson case where it was said:

"Thus, looking at substance and not to mere form, the cause as between the parties may well be regarded as one in equity and as it was entertained and tried by the court."

The Thompson case seems to be in accord with the thought expressed in *Re Reiser's Estate,* supra. This court there said [57 Utah 434, 195 P. 320]:

"There seems to be no reason, under our Constitution and laws, why a district court in a probate proceeding may not when necessary to a due administration of an estate exercise powers which ordinarily pertain to equity jurisdiction so that the business may proceed with-

out interruption or unnecessary delay. But, as suggested in the excerpt quoted from the case referred to [referring to In re Tripp's Estate], in such case the pleadings should be such as to warrant the exercise of the power. In this case, as we understand the record, as far as the proceedings in the settlement of accounts were concerned, they were insufficient to confer jurisdiction upon the court to adjudicate the claim in question as between the two estates."

While this court has stated that matters which are peculiarly of a probate nature must be tried as probate matters and matters which are of a non-probate nature, such as an action to quiet title, to set aside a deed or for judgment on a note, must be tried by the court in the exercise of its non-probate function (see *In re Agee's Estate,* supra, although there the court in probate was permitted to try a contested claim for attorney's fees earned as attorney for the administrator) it has not said that the District Court sitting as a court of plenary jurisdiction could not consider as addressed to its non-probate side a matter not cognizable in probate, if the allegations were present to invoke the non-probate jurisdiction. Noted should be the distinction between (1) probate matters tried as non-probate civil matters and civil matters tried as probate matters, and (2) probate matters properly tried as probate matters although apparently labeled as non-probate, and matters non-probate tried as such but labeled as probate matters. The latter types of cases require only a ministerial change in the clerk's office including, perhaps, an adjustment of filing fees. The former involves entertaining in actual probate proceeding matters entirely non-probate or vice versa. If in the course of probate and as a part of the probate procedure the court should adjudicate controverted matters involving title the result might not stand because probate is essentially in rem. But if the parties were all before the court and the pleadings contained all the allegations necessary to invoke the jurisdiction to try title and the court tried it as an action to quiet title, the mere fact that it was captioned in probate would not make

the judgment invalid. The distinction between a case where the probate division tries in probate a matter which could never be there tried, and a civil matter as such but labeled in probate seems to be the explanation of the apparent conflict between *Gee* v. *Baum, supra,* and *In re Thompson's Estate, supra.* The Gee case started in equity to set aside deeds and was addressed to the non-probate side of the court which was the only side which could entertain it. While it was there, that division of the court in the exercise of its civil jurisdiction reached over and exercised certain powers which could only be exercised by the probate division, that is, determined heirship and who was entitled to the property after determining the validity of the deeds. But according to the above-quoted excerpts from In re Reiser's Estate, this court threw doubt on whether even such distinction should be made. And, indeed, we find in the State of Washington according to *In re Martin's Estate,* 82 Wash. 226, 144 P. 42, 45, that a "superior court, in a probate proceeding, can exercise all of the powers of a court of general jurisdiction."

California evidently recognizes probate and non-probate jurisdictions, treats them as a functioning of the same court in different fields as we do in Utah. But California distinctly recognizes that where a matter addressed to the probate side of the court is really a matter in equity and tried as such under a probate caption it may be treated as addressed to the non-probate side of the court. See *In re Thompson's Estate,* 101 Cal. 349, 35 P. 991, at page 992, where it was said:

"The petition under these circumstances, may be regarded as a bill in equity addressed to the equitable powers of the superior court, and the form of its title is immaterial. It is not true that there were no issues, or that a burden was placed upon the appellant which would not have been upon him in a court of equity."

Also in the case of *In re Clary's Estate,* 112 Cal. 292, 44 P. 569, it was said:

"As in those cases, the petition here states all the elements of a bill of equity for an accounting, and was answered on the merits, and without objection to the form of the proceeding. The fact, therefore, that it was entitled in the estate, instead of being in form an independent action, can make no difference."

In *Re Riccomi's Estate*, 185 Cal. 458, 197 P. 97, 14 A. L. R. 509, a suit was brought on behalf of an heir against a trustee for an accounting. It was apparently addressed to the probate jurisdiction, according to the caption, but should have been addressed to the equity jurisdiction of the court because the subject matter of the action was for an accounting against a trustee. The court held there is just as an effective adjudication in regard to the subject matter as among all the parties as if it had originally been brought in equity. In other words, the California court simply considered that the superior court was sitting in its equity jurisdiction rather than in its probate jurisdiction in consideration of that suit.

*In re Tripp's Estate*, supra, is not really contra to these California decisions nor to *In re Thompson's Estate*, supra when we see the real basis for it. This court said in *In Re Tripp's Estate* [51 Utah 359, 170 P. 976]:

"As pointed out, no accounting or settlement of partnership affairs was had by the surviving partner with the administrators in compliance with the foregoing statute, nor were there any proper pleadings before the court whereby the equity powers of the district court, sitting as a court of probate, or otherwise, might be legally invoked, and proper findings on which any valid decree of a final settlement of partnership affairs could be predicated."

The court in its probate functioning has apparently no jurisdiction to hear an accounting between the administrator and surviving partner because of our statute, but there was also a hint that if there had been proper pleadings wherein equity jurisdiction could have been considered invoked the action would have been valid. *In re Tripp's Estate* is one of the earliest cases on this matter. If it cannot be distinguished from *In re Thompson's Estate* on

the grounds suggested it must be considered as overruled by that later case.

The earliest case, *Garr* v. *Davidson*, supra, presents a situation where the court refused to consider as addressed to the probate division a matter brought in equity. It does not appear that the case considered this possibility as did the later cases. Moreover, the action was brought under a statute which in any case was not available to the plaintiff until one year had elapsed after decedent's death so in any case the action was prematurely brought. Furthermore, the case presented a situation cognizable only in probate, that is, determination of heirship, brought as a civil action. The lower court sustained the demurrer and dismissed the action. Certainly in such situation, where the court had not proceeded to try the issues, there was no need of permitting the plaintiff to proceed as if his petition had been addressed to probate. Since he had just begun he could be required to refrain and commence in probate where he should have first gone. The case is different where the court has proceeded to hear the issues and render judgment. In such cases where the allegations are sufficient to invoke the proper jurisdiction and to present the issues cognizable within the jurisdiction which should be invoked and the parties are served in a manner to bring them under that jurisdiction, there seems to be no reason why the label given to the action in the caption should control. I think the law in Utah is now clearly to the effect that if the above requirements are met the matter will be considered as having been addressed to the side of the court to which it should have been addressed, and actions taken by the court in the matter will be considered as having been taken in pursuit of the authority it exercises when functioning in that capaciy. The matter of a change of caption or a redocketing of the case or of the proceedings is a matter which may be adjusted ministerially.

But again, warning should be sounded regarding the situation where a civil case is tried as a probate matter and

probate matter tried as a civil case when they are respectively purely matters cognizable only as civil and as probate. It is one thing to determine a civil matter as a probate matter or a probate matter as a civil case and quite another thing to try a probate matter as a probate matter and a civil case as a civil case, although they may be addressed to the wrong divisions of the court. The first is a matter of substance; the second a matter of labels and ministerial adjustment. An example of the first class of cases would have been furnished if judgment had gone against Aurelius McLaren in the lower court when he was in a proceeding in which he was in probate by reason of the fact that he was an heir. The probate division by virtue of its jurisdiction of the estate and the heirs for general purposes of administration could not in probate proceedings wherein the party was served by the mailing to him of a probate notice of the contest, have given judgment against him in a matter essentially civil in its nature.

PRATT, J., dissents.