LUNDY v. CAPPUCCIO (BALL et al., Interveners).

No. 3325.   Decided April 30, 1919.   (181 Pac. 165.)

1. ATTORNEY AND CLIENT—COMPENSATION—LIEN ON JUDGMENT—
   PRIORITY OVER GARNISHMENT. Under Comp. Laws Utah 1917,
   section 346, relating to attorney's compensation and liens, attor-
   neys who recovered judgment for their client have a lien upon
   it and the proceeds for their compensation, and may enforce it
   against the defendant, unless estopped, notwithstanding he
   paid the amount of the judgment in garnishment proceedings
   against the client, the judgment creditor.   (Page 424.)

2. ATTORNEY AND CLIENT—LIEN OF ATTORNEY—ASSERTION. The lien
   of attorneys for compensation on recovery of a judgment fol-
   lows the proceeds of the judgment into the hands of garnish-
   ment creditors of their client, to whom the judgment debtor paid
   the amount of !the judgment.   (Page 426.)

3. ATTORNEY AND CLIENT—LIEN OF ATTORNEY—ASSERTION. Attor-
   neys who, under Comp. Laws Utah 1917, section 346, had a
   lien on a judgment recovered for their client, may, the judg-
   ment debtor having paid the amount thereof to garnishing cred-
   itors of their client, enforce their lien by an independent action,
   and are not restricted to intervention in the original action.
   (Page 426.)

4. ATTORNEY AND CLIENT—LIEN OF ATTORNEY—ASSERTION—PARTIES.
   Where attorneys, who recovered judgment for their client, had
   no agreement as to compensation, and, though informed of the
   garnishment of the proceeds of the judgment by other creditors
   of the client, took no steps to protect their rights, held, though
   payment of the amount of the judgment to the garnishing
   creditors did not satisfy the same, and destroy the lien of such
   attorneys given by Comp. Laws Utah 1917, section 346, yet
   such attorneys, as they could follow the proceeds into the
   hands of garnishing creditors, will not be allowed to enforce
   their lien solely against the judgment debtor, and should be
   compelled to bring in all of the parties, either in an inde-
   pendent proceeding or by intervention in the original proceed-
   ings.   (Page 426.)

Appeal from District Court, Third District, Salt Lake
County; *P. C. Evans*, Judge.

Action by G. E. Lundy against Guy Cappuccio in which
there was a judgment for plaintiff.   Thereafter James H. Ball

Appeal from Third District.

and another, interveners and as attorneys for plaintiff, caused execution to be issued upon the judgment, and a levy was made on property belonging to defendant. Defendant filed an affidavit and motion, which the court treated as an order to show cause why the judgment should not be satisfied, and from an order or judgment, setting aside the former order restraining sale of the property levied upon, defendant appeals.

REVERSED and REMANDED with directions.

*J. M. Bowman* of Salt Lake City, for appellant.

*Ball, Musser & Beck* of Salt Lake City, for respondents.

#### APPELLANT'S POINTS.

There must be an agreement as to the amount of the fee, between attorney and client, or the fee does not become a lien. This is not shown in this case, and the finding to that effect is not sustained by the evidence. (*Potter* v. *Ajax Mining Co.*, 19 Utah 430; *Broadbent* v. *D. & R. G. Ry.*, 48 Utah 602.)

Intervenors should not have been permitted a hearing in this proceeding without by a pleading, showing that they were entitled to such hearing.

#### RESPONDENT'S POINTS.

The right of an attorney to a lien upon the judgment he procures for his client is well settled. 2 R. C. L., section 159, et seq.; also section 165. Such lien takes precedence over and is prior and superior to attachment or garnishment; *Hanna* v. *Island Coal Company*, 51 A. S. R. 251.

GIDEON, J.

From the findings of the lower court the following facts appear:

On or about December 21, 1916, judgment was entered in the district court of Salt Lake county in an action against the defendant Cappuccio and others in favor of the plaintiff, Lundy, for $300 principal, $20.60 costs, and $25 attorney's fee. In that action James H. Ball and W. E. Rydalch, designated in the proceedings in this court as interveners, were attorneys for Lundy. It further appears that about August 4, 1916, a judgment was rendered in the justice court of Salt Lake City precinct against Lundy, who was defendant in that action, in favor of the plaintiff, Augustus Zetreauts, for something in excess of $160; that a writ of garnishment was issued from that court and served upon defendant Cappuccio, and that such proceedings were had that an order of the justice was made directing Cappuccio to pay that judgment, which was done on June 4, 1917, amounting to $168.25; also that in another action pending in said justice court judgment was entered in favor of the Otis Elevator Company, the plaintiff therein, against the plaintiff herein, Lundy, on August 27, 1914, for an amount of approximately $170; that a writ of garnishment was issued in that case and served upon Cappuccio, and that such proceedings were had that an order was made by the justice directing Cappuccio to pay into that court the amount of the judgment in favor of the elevator company, being $179.72; that in consequence of that order Cappuccio paid said amount on February 20, 1917; that the total of the payments made by reason of the said writs of garnishment and the orders of the justice court was $347.99. It likewise appears that prior to the date of paying these said amounts, and after the service of the writs of garnishment, Cappuccio, with his counsel, called upon the attorneys for Lundy, being the same attorneys designated as interveners herein, and attempted to adjust the question of fees or compensation to be paid to said attorneys, and also advised said attorneys of the fact that the writs of garnishment had been served upon him, and that he was in duty bound to answer such writs.

At that meeting counsel for Lundy, interveners herein, advised Cappuccio that they claimed a lien upon the amount of

the judgment, and that they would hold Cappuccio or the pro-
ceeds of the judgment for payment of their fee.   Apparently
there was some controversy as to the amount of compensation,
the interveners insisting that they were entitled to not less
than $250 for the services, but agreeing, if paid on that date,
to accept $150.   For some reason not explained in the record,
Cappuccio seemed to regard that amount as excessive, and
nothing further was done by either party.   Thereafter the
interveners, as attorneys for Lundy, caused execution to be
issued upon the judgment, and a levy was made by the sheriff
on certain property belonging to Cappuccio, and the same
was noticed for sale on February 18, 1918.   Thereupon, and
before the day of sale, Cappuccio, by his counsel, served writ-
ten notice upon the interveners as attorneys for Lundy, sup-
ported by affidavit, that he would move the court for an order
directing Lundy to satisfy the judgment on the records of
said court, upon the ground and for the reason that he had
paid the full amount of said judgment to the creditors of
Lundy in the garnishment proceedings before mentioned.   At
the hearing on that motion the interveners, as attorneys, ap-
peared apparently for Lundy in opposition to the motion, and,
while there were no pleadings or answer to the affidavit and
motion filed by Cappuccio, the court treated the matter as an
order to show cause why the judgment should not be satisfied,
and all parties proceeded to a hearing with that apparent un-
derstanding.

The objections on the part of plaintiff's counsel to the grant-
ing of the motion are best stated in the language of one of the
counsel at that hearing as follows:

"The contract between Mr. Lundy and his attorneys was—the
understanding was—that Lundy had nothing, and that the attor-
neys must look to the amount recovered in that action for their
fees, and with that understanding the attorneys proceeded and did
all the work that was done in that action.   We will also show that
the defendant Cappuccio had full knowledge of the claim made by
the attorneys of their lien on the judgment."

The court made findings of fact and conclusions of law,
entered an order or judgment denying the motion of the de-
fendant to have the judgment satisfied, fixed the amount of

fees due counsel for Lundy at $150, and decreed that they had a lien upon the judgment entered in the original proceeding against the defendant for that sum, with interest. The court also set aside its former order restraining the sheriff from selling the property levied upon under the execution, and further directed that upon the payment by defendant Cappuccio of $150, with interest and costs, the judgment be satisfied. From that order or judgment, the defendant, Cappuccio, appeals to this court.

Numerous assignments of error are made—among others, that the court had no power or right to make findings of fact or conclusions, as there were no issues presented upon which such findings could be made; that the court erred in permitting interveners, Ball and Rydalch, to make a claim of lien, upon the ground that they had failed to file any complaint in intervention setting forth the facts on which relief was sought; that the court erred in finding that the interveners were entitled to recover the sum of $150, or any other sum, for the reasons that (a) the parties interested in and affected by that finding had not presented any such issue by any pleadings, and the court was without authority to make such finding, and (b) that the finding is not supported by the evidence.

The interveners claim the right to a lien under the provisions of Comp. Laws Utah 1917, section 346, which reads as follows:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whatsoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment."

It may be conceded that under the provisions of that section the interveners, as attorneys for Lundy, had a lien upon the judgment in question and the proceeds thereof for the amount of their compensation, unless

they are estopped to assert it.  It may be conceded, also, that the payments of the judgments against Lundy in the justice court by the defendant, Cappuccio, would work a satisfaction of the judgment obtained in the district court to the amount of such payment, and, as between Lundy and Cappuccio, the judgment is satisfied, and the motion should have been granted unless the interveners, by reason of the lien for attorney's fee, had a right to object to such cancellation.  Appellant contends, as we understand his position, that the payment of the judgments in the justice court was not a voluntary payment on his part, but that such payment was compulsory, made upon an order of court having jurisdiction over the defendant, Cappuccio, and the garnishment proceedings; that the interveners were advised of such proceedings, and it was therefore incumbent upon them, if they intended to rely upon the lien, to assert it and take proceedings at that time to protect their interest, and not compel the defendant, Cappuccio, to incur the necessary expense of defending against the garnishment proceedings and probably having judgment entered against him, with attending costs. On the other hand, it appears to be the contention of the interveners, who are the real parties in interest as respondents here, that the lien existed by virtue of the statute, that it was the duty of the defendant to protect that lien, and that, if he proceeded to pay the judgments in the district court, he would do so at his peril.  As stated by one of the interveners in his testimony before the court, in reciting what was said at one of the interviews with defendant Cappuccio:

"I told Cappuccio at that time, and Mr. Ball told him, that if he went to paying out money on this matter without bringing us in and looking after our fees, he would do so at his own peril, and we talked in a friendly way and told him our position."

The testimony of both interveners was to the effect that no contract fixing a definite sum was made by them with the plaintiff, Lundy, but that they were to receive whatever compensation they did receive from the proceeds of the judgment. The above quotation from the testimony of the witness intervener reflects accurately, it seems, the position, and their con-

duct toward the defendant, Cappuccio, when advised that the garnishment proceedings had been instituted against him.

Under the provisions of the section quoted, the lien of an attorney for compensation for his services attaches from the commencement of an action upon the judg-          2
ment in his client's favor and upon the proceeds thereof, in whatsoever hands they may come. That lien can only be lost, either by waiver or such acts on the part of the attorney as would constitute an estoppel. It cannot be defeated by a subsequent attachment or garnishment. *T. Harlan & Co.* v. *Bennett et al.*, 127 Ky. 572, 106 S. W. 287, 128 Am. St. Rep. 360. The facts appearing in this record would not authorize a holding that the interveners had lost their right to claim a lien, but          3, 4
clearly they were at fault in not taking some action to enforce or assert such lien at the time they were advised of the garnishment proceedings against the debtor  We are not unmindful, and ought not to be, that the defendant is a layman, and did not fully understand the rights of the interveners as lien claimants, nor, possibly, his duty as a judgment debtor; neither should we overlook the fact that the interveners are lawyers of experience and ability, and understand their legal rights, and the methods necessary to enforce them. It is clear that, as the amount of the compensation had not been agreed upon between the interveners and their client, Lundy, the court was without authority or power to fix that amount, unless, at least, the plaintiff, Lundy, had some notice of the proceeding at which such judgment or order would be made. The court, at the hearing, fixed the amount due the interveners as $150. There was nothing before the court, however, indicating that the services rendered were of less value than $250 unless it be the statement on their part, made to Cappuccio, that if payment was made at the time of the interview between those parties they would accept $150.

At the hearing on the motion, nominally at least, the interveners were representing the plaintiff, Lundy; but as we have seen, Lundy was not the real party in interest. The interveners could not represent the plaintiff, Lundy, in any proceedings attempting to fix the amount of their compensa-

tion, as, of necessity, in the absence of an agreement, any proceedings to determine such amount their interests would be opposed to that of their client. There is nothing in the record to indicate that both of the judgment creditors in the proceedings in the justice court are not within the jurisdiction of the district court. If within the jurisdiction of the district court, such parties can, by an order, be brought into this proceeding and the rights of all parties determined. The lien in favor of the interveners follows the proceeds of the judgment into the hands of those garnishment creditors. *Carl Fischer-Hansen* v. *Brooklyn Heights Rd. Co.*, 173 N. Y. 492, 66 N. E. 395; *Bailey* v. *Murphy,* 136 N. Y. 50, 32 N. E. 627; *Poole* v. *Belcha,* 131 N. Y. 200, 30 N. E. 53. Under the provisions of our Code the district court has authority to order such parties into proceedings of this nature as are interested in the subject-matter of the litigation or are necessary for a proper determination of the rights involved The interveners, however, are not limited to proceedings in this action, but may, if they so elect, proceed to enforce their claim of lien by an independent action. *Carl Fischer-Hansen* v. *Brooklyn Heights Rd. Co.,* supra. As indicated, the interveners were not diligent in an effort to enforce their lien, and to now compel the defendant, Cappuccio, to pay the amount of such lien, without an effort first being made to collect such amount from the parties actually receiving the proceeds of the judgment, would be a hardship which a court ought not to enforce. As indicated, however, the defendant is not entirely blameless for not taking some action to protect his interest, when advised that the lien would be insisted upon by the interveners.

In view of the entire record, and after a careful consideration of the rights and interests of the parties, we have, with some doubt as to what order ought to be made in this case, concluded to reverse the order of the district court and remand the cause, with directions to permit the interveners to proceed in such manner as they may elect, either, in this proceeding or in an independent action, and bring all the parties interested before the court for a determination of their respective rights, to enforce the lien of interveners to the

amount of the compensation found due them against the proceeds of the judgment in the hands of garnishment creditors in the justice court, and, if unable to collect from such judgment creditors, to enforce the same against defendant, Cappuccio. Such is the order. Each party will pay his own costs on appeal.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

FRICK, J., concurs in the result.