In re AGEE'S ESTATE. Appeal of HOLLINGSWORTH

No. 4431. Decided January 3, 1927. (252 P. 891.)

*Carl A. Badger,* of Salt Lake City, and *L. J. Holther,* of Ogden, for appellant.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for administrator.

134

136

## THURMAN, J.

This is a proceeding on the part of Charles R. Hollingsworth, an attorney at law, in the matter of the estate of Elaine R. Agee, to recover compensation for professional services rendered for and in behalf of the estate.

The petition of Hollingsworth, who was one of the attorneys employed by the administrator of the estate, in substance, alleges that Robert G. Agee, the husband of deceased, came to his death by accidental drowning July, 1922; that in his lifetime he procured five accident insurance policies which were in force at the time of his death; that said policies were issued by divers insurance companies; that said policies with their accumulations aggregated the sum of $44,250; that the said Elaine R. Agee, his wife, was the beneficiary named in said policies; that in her lifetime, on or about July 27, 1922, the said Elaine R. Agee employed petitioner, Hollingsworth, to represent her as her attorney in an effort to collect said insurance, either by suit or otherwise, and agreed with said petitioner that he should receive for his services a reasonable attorney's fee contingent upon his recovery upon said policies; that petitioner accepted said

employment upon the conditions specified and entered upon the same; that he investigated both the law and the facts in connection therewith and filed with said insurance companies the necessary proofs of death.

It is further alleged in the petition that each and all of said insurance companies denied their liability upon said policies; that actions were commenced by petitioner for and on behalf of said Elaine R. Agee against said insurance companies on each of said policies, in the district court of Weber county, and said actions were pending at the death of said Elaine R. Agee, which occurred January 11, 1923; that petitioner represented her as her attorney in such matters from July 27, 1922, until the date of her death; that Hon. Alfred W. Agee was duly appointed and qualified as administrator of her estate and continued the employment and retainer of petitioner on the same contract and terms as existed between petitioner and said Elaine R. Agee.

It is further alleged by petitioner that said administrator, upon being qualified, on February 20, 1923, filed his petition in the matter of said estate, reciting the fact that said Elaine R. Agee, deceased, at the time of her death was the beneficiary of said insurance policies, and that each of said insurance companies had refused to make payment thereof, except the sum of 10 per cent of the original amount, and represented that, in his opinion and in the opinion of his counsel, each of said insurance companies was liable upon the policy or policies issued by it for the full amount thereof, and that the same could be recovered in an action therefor; that in February, 1923, the court entered its order directing said administrator to begin and prosecute all such suits as might be necessary or advisable for the collection of the amounts due upon said policies, and authorizing him as administrator to employ counsel for that purpose.

The aforesaid petition and order are attached to the complaint and made a part thereof.

It is then alleged that four actions were commenced in the District Court of the United States for the District of Utah, in the Northern division thereof, against four of the said

insurance companies for the amount due on their respective policies; that said actions were thereafter consolidated and tried as one action in February, 1924; that during all of said time said administrator continued the employment of petitioner as one of the attorneys therein, and petitioner was at all times one of the attorneys for plaintiff in each and all of said actions and was continued in said employment, under the agreement between petitioner and Elaine R. Agee made July 1, 1922. The petitioner further shows that at the trial of said cause verdict was rendered and judgment entered in favor of said administrator against each of said insurance companies for the full amount of the principal and interest due upon the policy issued by it and that the aggregate amount of said judgment was the sum of $48,178; that motion was made by defendants in said cause for a new trial which motion was denied; that said defendants appealed to the United States Circuit Court of Appeals, wherein the judgment was affirmed; that defendants then filed their petition in the United States Supreme Court for a writ of certiorari, and briefs for and in opposition thereto were filed in said court, but that petitioners for said writ thereafter voluntarily dismissed or withdrew said petition.

It is further alleged that said insurance companies, defendants, afterwards, applied for a rehearing of said cause in the United States Circuit Court of Appeals, which application was denied March 6, 1925; that in April, 1925, defendants filed a second petition in the Supreme Court of the United States for a writ of certiorari to the said Circuit Court of Appeals; that briefs for and against said petition were filed and said writ was by said court allowed June 8, 1925; that thereafter said administrator filed in said court his motion to dismiss said writ of certiorari or to affirm said judgment and notice the same for hearing October 12, 1925, supporting his said motion by a written brief; that on October 12, 1925, said Supreme Court vacated its order of June 8, 1925, granting said writ, and thereupon dismissed said petition; that mandates from the Supreme Court of the United States and the Circuit Court of Appeals were filed in the

District Court of the United States for the District of Utah, Northern division, and in November, 1925, the defendant companies paid said judgments and accrued interest and costs to said administrator, amounting in all to the sum of $55,354.80, of which $246.77 was for costs, the remainder being for principal, interest, and accumulations.

It is then alleged that petitioner participated fully in all matters and proceedings in connection with the aforesaid actions hereinbefore enumerated. Petitioner alleges that there is due and payable to him a reasonable attorney's fee by reason of his said employment and for his services thereunder from July 27, 1922, to November 23, 1925, in and about the collection of the amounts due on said policies, and that $6,875 is a reasonable sum for said services; that no part thereof has been paid, except the sum of $500 paid him by said administrator November 23, 1925, on account of said services and on another account to which reference will be made.

It is further alleged that there are no off-sets against said sum due, and that the said administrator refuses to allow or to pay the same.

Petitioner also alleges as a distinct and separate matter that in August, 1922, as attorney at law, he was employed by the said Elaine R. Agee, then living, to commence an action against the United States Fidelity & Guaranty Company to recover the sum of $10,729.63, which had been wrongfully obtained from her by said company; that it was agreed between petitioner and the said Elaine R. Agee that for such service he would be paid a reasonable attorney's fee contingent upon recovery; that petitioner accepted said employment, entered upon the same, investigated the law and the facts and represented her as her attorney therein, from August, 1922, until her death January 11, 1923; that upon the qualification of said administrator he continued said employment under the same agreement and upon the same terms as existed between petitioner and Elaine R. Agee in her lifetime; that said administrator filed a petition reciting the fact that said last-named company had wrong-

fully obtained money from his intestate and expressed the belief that, as administrator, he was entitled to recover the same with interest, whereupon the court made an order directing said administrator to bring suit to recover said sum and authorized him to employ counsel for said purpose; that petitioner was employed by said administrator as one of his attorneys in said matter upon the terms hereinbefore stated. It is then alleged by petitioner that suit was commenced against said company by the administrator, and that after certain proceedings were had a compromise judgment was entered in favor of the administrator for the sum of $5,000 and the assignment by said company of a certain claim it had against the estate of Robert G. Agee; that said sum of $5,000 was paid to said administrator and said assignment duly made; and that an additional sum of $1,793.99 was received by said administrator from the estate of Robert G. Agee on account of matters connected with the compromise settlement. The petitioner alleges that he participated fully in all of said matters, and that there is due him under his said contract of employment, and services thereunder, the sum of $300, which he alleges is a reasonable fee for said service, and that there are no offsets against said claim, but that the administrator has refused to allow or pay the same.

It is also alleged that petitioner, within the time allowed therefor, to wit, on June 16, 1923, presented to and filed with said administrator his certain claim, covering, among other matters, his employment as attorney by Elaine R. Agee respecting said insurance policies and the recovery of said sum wrongfully obtained from her by the United States Fidelity & Guaranty Company, and also containing a statement of certain cash advanced by him to her in her lifetime, amounting to $34.05. A copy of the claim is attached to and made part of the petition. A further statement is alleged in the petition of cash expended by petitioner for her, aggregating the sum of $28.11, and it is alleged that no payments have been made thereon and that there are no offsets to the same. It is alleged that the claim so filed on June 16, 1923,

and presented to the administrator was a contingent claim as to said attorney's fees in the insurance matters and as to the amounts due from the United States Fidelity & Guaranty Company, but that the same can now be fixed and determined by reason of the recovery made against said insurance companies; that the same is now hereby rendered and presented to and filed with said administrator for the sum of $6,875 as to said insurance matter, $300 as to the recovery against the Fidelity & Guaranty Company, $63.25 cash expenditures, less $500 received from the administrator leaving a balance due petitioner of $6,737.25; that the heirs at law of Elaine R. Agee are five children, and that Alfred W. Agee is the duly qualified and acting guardian of their estate; that petitioner is informed and believes that the estate of Elaine R. Agee has been fully administered upon and is ready for final settlement and distribution upon the payment of petitioner's attorney's fee and cash expended by him.

It is also alleged that the administrator in filing his inventory of the estate alleged that he had received from the insurance companies the sum of $44,250 on said policies, which, less the expenses of collection, amounted to $31,156.65. Petitioner alleges upon his information and belief that, of the amount so received by the administrator for collection, the sum of $12,500 was allowed as attorney's fees for services rendered in making the collection. It is further alleged that the administrator has charged no costs or expenses of collection or for attorney's fees on account of the sums received in connection with the case against the United States Fidelity & Guaranty Company.

It is also alleged in the petition that on or about February 15, 1926, the administrator and the Attorney General, in fixing the amount of inheritance tax due from said estate, stipulated a settlement on the basis above stated; that the Attorney General consented and allowed as a deduction the sum of $13,093.35 as costs of collection, and that not less than $12,500 of said sum was allowed as attorney's fees in making the collection; that settlement of the inheritance tax was

made in accordance with the stipulation approved by the court, and the sum found due the state, amounting to $1,487.16, was on February 17, 1926, paid to the Attorney General for the treasurer of the state of Utah.

Finally, it is alleged that in determining a reasonable attorney's fee for petitioner the fact that interest on the $44,857.99, amounting to $10,857.99, was omitted from the calculation, and the further fact that the sum of $6,793.99, collected on account of the case against the United States Fidelity & Guaranty Company, was not included, should be given due weight and consideration.

Petitioner alleges that he is entitled to and claims a lien for his attorney's fee herein, as provided in Comp. Laws Utah 1917, § 346, and expressly asserts and demands said lien as attaching to the proceeds of said actions, which proceeds have come into the hands of said administrator and are now in the control and custody of the court.

Petitioner prays (1) that the court fix and allow his fees as attorney in said insurance cases in the sum of $6,875; (2) that he be allowed the sum of $300 in the case of United States Fidelity & Guaranty Company, less a credit paid by said administrator on account in the sum of $500; (3) that his claim of $63.25 for cash expended be approved; (4) that the court direct said administrator to forthwith make payment to petitioner of said attorney's fees in said insurance matters and for said cash expended, taking credit for the said $500 paid on account; (5) that the court fix and declare the proceeds coming into the hands of said administrator herein as a result of the actions on the said insurance policies and on the claim against the United States Fidelity & Guaranty Company burdened and impressed with a lien in favor of petitioner for said attorney's fees, and for such other and further relief as may be proper in the premises.

At the expense of considerable time and space we have deemed it necessary to set forth fully the substance of the petition for the reason that the case was disposed of on demurrer in the court below. The demurrer filed by the administrator challenged the sufficiency of the petition on

three separate grounds (1) that the petition does not state facts sufficient to authorize a court to make any such order, or any order, in the premises; (2) that the petition shows on its face that the court is without jurisdiction in the exercise of probate powers to determine the question of the amount of the petitioner's fees to order any payment to the petitioner for services alleged to have been performed by him; (3) said petition shows upon its face that the court, in the exercise of probate powers, has no jurisdiction over the subject matter.

The trial court sustained the demurrer on all of the grounds stated. Petitioner elected to stand on his petition and claim filed, whereupon the court dismissed the petition on the merits. Judgment was entered accordingly. Petitioner appeals.

Respondent's demurrer is not only in the nature of a general demurrer, but likewise challenges the jurisdiction of the trial court. It is therefore proper to first consider the specific grounds upon which he relies. As we understand respondent's argument, although the grounds relied on are somewhat interwoven and blended in the discussion, his contention is, first, that appellant has not proceeded in accordance with certain sections of the Code of Probate Procedure, and that therefore the petition does not state a cause of action; second, that it appears from the petition that appellant's cause of action, if any he had, was against the administrator personally and not against the estate; third, that in any event the trial court in a probate proceeding was without jurisdiction to hear and determine the cause.

Respondent relies on certain sections of the Comp. Laws of Utah 1917, and quotes the substance thereof as follows:

"Section 7645 provides for notice to creditors. Section 7646 prescribes the length of notice. Section 7648 provides that all claims arising upon contracts, whether the same be due, not due, or contingent, must be presented within the time fixed in the notice, or with certain exceptions be forever barred, with a proviso that nothing in the title (Probate Code) shall be so construed as to prohibit the foreclosure of liens or mortgages as hereinafter provided.

"Section 7649 provides for the presentation of claims, and that if the claim, or any part thereof, is secured by mortgage or lien which has been recorded, it shall be sufficient to describe the mortgage or lien and refer to the date, volume, and page of the record.

"Section 7650 provides, among other things, that the administrator must indorse on a claim properly presented to him his allowance or rejection with the date, and if he allows the claim he must present it to the judge, who must indorse upon it his allowance or rejection. If the administrator or the judge for ten days refuses or neglects to indorse such allowance or rejection, the claimant may, at his option, on the tenth day treat the claim as rejected on that day.

"Section 7651 provides that every claim allowed by the executor or administrator and approved by the judge, or a copy thereof * * * must, within thirty days thereafter, be filed in the court, and be ranked among the acknowledged debts of the estate to be paid in due course of administration.

"Section 7653 reads as follows:

" 'When a claim is rejected, either by the executor or administrator, or the judge, the holder must bring suit in the proper court against the executor or administrator within three months after the date of its rejection, if it be then due, or within two months after it becomes due; otherwise the claim shall be forever barred.'

"Section 7654 provides that when a claim is presented to the judge he may examine the claimant and others on oath and hear legal evidence touching the validity of the claim.

"Section 7655 provides that no holder of any claim against an estate shall maintain an action thereon unless the claim is first presented to the executor or administrator, except that an action may be brought without notice by any holder of a mortgage or lien to enforce the same against the property subject thereto. But to do that the party must expressly state in his complaint that he waives all recourse against other property.

"Section 7659 provides that a judgment, rendered against an executor or administrator on a claim against the estate, only establishes the claim as though it had been allowed by the executor or administrator and the judge, and that the judgment must be that it be paid in due course of administration. In other words, if the claim is allowed by the legal representative and the judge, that establishes the claim and it must be paid in due course. If rejected by either, the claimant must sue, and if he obtains judgment establishing his claim,

that operates the same as an approval by the executor or administrator and the judge, and the amount so established must be paid in due course, a certified transcript of the judgment having been filed among the papers of the estate."

There can be no doubt that claims for debts contracted by decedent in his lifetime must be presented to the administrator or executor, as provided in the sections referred to, and, if rejected or disallowed as therein stated, suit must be commenced within the time specified or the claim will be forever barred. We are of opinion that these provisions are jurisdictional, and unless compliance is made therewith, the court has no power to allow the claim. Such seems to be the uniform trend of judicial opinion construing statutes similar to those above quoted. Counsel for respondent call our attention to a few of such cases: *Osborne* v. *Foresythe*, 54 Okl. 40, 153 P. 207; *In re Barnett's Estate*, 52 Okl. 623, 153 P. 653; *Miller* v. *Bradburn*, 106 Okl. 234, 233 P. 736; *Garver* v. *Thoman*, 15 Ariz. 38, 135 P. 724; *Dent* v. *Harris & Co.*, (Tex. Civ. App.) 255 S. W. 221.

The statute itself is so conclusive upon this question it is unnecessary to burden the opinion with the citation of cases. Counsel for appellant makes no contention to the contrary. Their contention is that the sections of the statute relied on by respondent, respecting the time within which claims must be presented and suits instituted, in case of rejection or disallowance, relate only to claims based upon obligations against decedent arising in his lifetime, not secured by lien or mortgage. This is also our understanding of the scope and meaning of the statute in respect to the presentation of claims by creditors and the commencement of actions to recover thereon in case of disallowance or rejection.

In *Garver* v. *Thoman*, supra, cited by respondent, the first headnote reads:

"'Creditors' of an estate are those who have become such because of dealings or transactions with the decedent in his lifetime, and not those dealing with the executor after decedent's death, and the claims

of 'creditors' are debts or obligations with which the personal representative had nothing to do originally, but which are to be verified, proved, and allowed, as provided by Civil Code 1901, paragraphs 1743, 1745, 1746."

It is contended by appellant that the claim of appellant is secured by a lien on the fund in the estate recovered and brought into the estate through the efforts of appellant and his associates, as attorneys at law, in actions prosecuted by them against the insurance companies. The facts are stated at length in the statement of the case, so that a bare reference thereto is all that is necessary in this connection. Appellant claims and asserts his right to a lien upon such fund not only because of Comp. Laws Utah 1917, § 346, which provides for an attorney's lien, but also by virtue of a contract with the decedent, Elaine R. Agee, in her lifetime, by which his fee for services in such cases was ▄ contingent solely upon recovery of the fund in question. It is also claimed by appellant that said Elaine R. Agee died before the completion of said services and the recovery of said fund, and that her administrator, defendant in this proceeding, continued said contract and agreement upon the same terms. The following authorities are among the many cited by appellant in support of his right to a lien on the fund: 6 C. J. p. 782, § 394; *Buell* v. *Kanawha* (D. C.), 201 F. 762; *Ex parte Plitt*, 19 Fed. Cas. No. 11228; *In re Creighton's Estate*, 93 Neb. 90, 139 N. W. 827; *Wait* v. *Atchison, etc., R. Co.*, 204 Mo. 491, 103 S. W. 60; *Bauernschmidt* v. *Bauernschmidt*, 101 Md. 148, 60 A. 437; *Lomack Home, etc.*, v. *Iowa Mut. Tornado Ins. Ass'n*, 155 Iowa, 728, 133 N. W. 725; *Guardian Trust & Dep. Co.* v. *Greenboro Water Supply Co.* (C. C. A.), 180 F. 321; *Edwards* v. *Bay State Gas Co. of Del.* (C. C.), 172 F. 971; *In re Baxter & Co.* (C. C. A.), 154 F. 22.

The cases above cited all relate to the question of attorney's liens and with one or two exceptions were equitable rather than statutory. The right to a lien in each case was sustained.

Counsel for appellant also refer to numerous cases under statutes authorizing attorney's liens, among which are the following under the New York statute, which is identical with ours: *In re Ross,* 123 App. Div. 74, 107 N. Y. S. 899; *In re Knapp,* 85 N. Y. 284; *In re Kellogg,* 96 App. Div. 608; 88 N. Y. S. 1033; Id., 180 N. Y. 534, 72 N. E. 1144; *Lee* v. *Van Voorhis,* 145 N. Y. 603, 40 N. E. 164; *Arkenburgh* v. *Little,* 176 N. Y. 551, 68 N. E. 1114; *In re Pieris,* 82 App. Div. 466, 81 N. Y. S. 927; *In re Bender's Will, etc.,* 111 App. Div. 23, 97 N. Y. S. 171; *In re O'Connor's Estate,* 177 App. Div. 616, 164 N. Y. S. 574; *In re Dawson's Estate,* 180 N. Y. S. 271; *In re Rabell,* 175 App. Div. 345, 162 N. Y. S. 218; *In re Kellogg,* 96 App. Div. 608, 88 N. Y. S. 1033.

In most of the above cases the lien was enforced. In cases where it was not enforced, the cases are distinguished from the case at bar. It was held in some of the cases that it does not matter that the client happens to be an executor or administrator. See, especially, *In re Ross,* supra.

Counsel for appellant also refers to *Broadbent* v. *D. & R. G. Ry. Co.,* 48 Utah, 598, 160 P. 1185, and *Lundy* v. *Cappuccio,* 54 Utah, 420, 181 P. 165. These cases involve the question of attorney's liens, under the Utah statute (section 346), to which reference has been made. In both cases the lien was sustained. See, also, *Strong* v. *Taylor,* 82 Ala. 213, 2 So. 760, and *Fischer-Hansen* v. *Brooklyn Heights R. Co.,* 173 N. Y. 492, 66 N. E. 395, referred to with approval by this court in the Cappuccio Case, supra.

Many other cases from other jurisdictions are referred to by appellant to the same effect.

Respondent's counsel refer to a few cases which they insist are against appellant's contention that an attorney's lien may be impressed upon the estate of a decedent. *Gurnee* v. *Maloney,* 38 Cal. 85, 99 Am. Dec. 352; *In re Estate of Page,* 57 Cal. 238; *Waite* v. *Willis,* 42 Or. 288, 70 P. 1034. It is also stated that many other states have attorney's lien statutes, but cases construing the same have not been called to our attention.

We are of opinion that appellant's contention in respect to the right of an attorney's lien in cases of this kind is sustained both by reason and by the great weight of authority. Further reference to this feature of the case will be made before concluding the opinion.

But it is contended by respondent that, under the provisions of section 7655, supra, while the holder of a lien upon the property of an estate may bring an action to enforce the same without notice, he must expressly state in his complaint that he waives all recourse against other property. That provision was, no doubt, included in the section to guard against a deficiency judgment. If the claimant demands the preference over other creditors which his lien or mortgage gives him, he need give no notice to the administrator before commencing his action, but he must in his complaint expressly waive recourse against other property of the estate. The petition of appellant in the instant case does not expressly state that appellant waives all recourse against other property but the whole tenor of the petition, the terms of the contract relied on, the amount of the fund recovered, as compared with the fee demanded, together with the prayer of the petition is conclusive of the fact that appellant looks only to the fund upon which he has a lien, and that he has no recourse whatever against other property. Besides this, appellant's main reliance for his lien is his contract with the administrator under which contract the services were rendered. The statute requiring an express waiver as to recourse against other property therefore does not apply.

In our opinion, there is no merit in respondent's contention, and the cases cited in support thereof, as will appear on examination, have no application to the facts in the case at bar. *In re Baxter's Estate*, 22 Ariz. 91, 194 P. 333; *Bank* v. *Charles*, 86 Cal. 322, 24 P. 1019, *Bank* v. *Glenn's Estate*, 10 Idaho, 224, 77 P. 623, 109 Am. St. Rep. 204.

Appellant makes the further point that, independent of his arrangement with the administrator that the services of appellant, as one of the attorneys of the administrator,

would be continued on the same terms as appellant's contract with Elaine R. Agee before she died, nevertheless his contract with Elaine R. Agee continued in force after her death. In support of this proposition appellant cites the following cases: *Wylie* v. *Coxe*, 15 How. 415, 14 L. Ed. 753; *Barrett* v. *Towne*, 196 Mass. 487, 82 N. E. 698, 13 L. R. A. (N. S.) 643; *Price* v. *Haeberle*, 25 Mo. App. 201. The cases seem to be in point. In the case last cited the first and second headnotes read:

"(1) The death of the client does not revoke an attorney's authority to proceed, under a contract by which the attorney undertakes to prosecute to final adjudication a claim for an exclusively contingent compensation.

"(2) Such a contract being entire, the administrator cannot discharge the attorney without making the estate liable for the entire compensation stipulated for in the contract."

It is reasonable to presume that the administrator recognized the binding force as well as the justice of this rule, when he expressly continued the contract on the same terms after he qualified as administrator of Elaine R. Agee's estate.

There is another feature of this case which distinguishes it from the ordinary case in the administration of an estate. The petition shows that, after the administrator qualified as such, he applied by petition to the court for authority to prosecute the several case against the insurance companies, and also for authority to employ counsel for that purpose. In ordinary cases in the administration of an estate, the administrator is not required to obtain an order for authority to prosecute actions in behalf of the estate or to employ counsel therefor. Comp. Laws, supra, § 7720, authorizes actions for the recovery of property by the administrator the same as might have been maintained by his intestate, and section 7739 allows the administrator reasonable fees paid to his attorneys for conducting such suits. In such cases, the attorneys are appointed by the administrator and suits conducted without a special order of the court. In the in-

stant case, it is inferable from the petition filed in court by the administrator for authority to prosecute the cases and employ counsel that, in his opinion, the cases against the insurance companies would be hotly contested. (Which was afterwards proved to be the case.) For that reason, he sought and obtained special authority to prosecute the suits and to employ counsel for that purpose. His manifest purpose in making special application to the court for such order was to relieve himself of personal liability, and by arranging with counsel for an attorney's fee contingent alone upon recovery, it does seem that he intended thereby that the fund to be recovered would be charged with a lien for the reasonable compensation of the attorney so employed. In any event, whether the administrator intended it or not, we are of opinion, as matter of law, that a lien for appellant's fee was impressed upon the fund from the time it was recovered.

Respondent makes the further contention that appellant's cause of action, if any he has, is against the administrator personally and not against the estate. Such, no doubt, is the rule in ordinary cases of administration. Upon this point respondent's counsel call our attention to many cases. The rule in such cases is so well established that it is unnecessary to refer to all the cases cited. In *Brown* v. *Quinton*, 80 Kan. 44, 102 P. 242, as reported in 25 L. R. A. (N. S.) 71, 18 Ann. Cas. 290, cited by respondent, there is a comprehensive note, commencing at page 72, in which the rule contended for by respondent is stated and authorities in support thereof are cited. The exceptions to the rule are also stated in the note commencing at page 75.

In view of what has been said in the preceding pages of this opinion, we deem it unnecessary to occupy space in reviewing the cases referred to in the note.

Bearing in mind the special and extraordinary circumstances of the instant case, as detailed in the petition of appellant, we are convinced that this is a case in which the fund is primarily liable for whatever amount is reasonably due the appellant for his services, in its behalf, and that

appellant is entitled to maintain an action therefor against the administrator of the estate as such.

This brings us to the last and perhaps most important question in the case. It is contended by respondent that the district court in a probate proceeding was without jurisdiction to hear and determine the cause. If the court is right in its conclusions thus far, that the claim of petitioner is a lien upon the fund which forms part of the estate now being administered in the court below, it must be conceded that appellant is entitled to enforce said lien against the estate in any court of competent jurisdiction for the satisfaction of his claim. Is the district court, in the exercise of probate powers, a court of competent jurisdiction? The fund in question is now under the control of that court in a probate proceeding. Comp. Laws Utah 1917, § 346, hereinbefore referred to but not quoted, reads as follows:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whatsoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment."

But the contention is that, notwithstanding the fund or proceeds of the judgment is now in the hands or under the control of the district court in a probate proceeding, appellant must nevertheless proceed in the same court in another form of action, in order to enforce his lien. In support of such contention respondent quotes the following passage from Woerner on American Law of Administration, Vol. 1, § 152:

"Although it may be the duty of the court, in passing upon the administration account, to determine the reasonableness of payments for such services, and allow or reject the credits taken therefor, it has not the power, unless expressly granted by statute, to adjudicate

upon the claims of such persons against the administrator; their remedy, if he refuse to pay, is in another court."

The rule announced by Woerner in the excerpt quoted is not in conflict with the contention of appellant, when considered together with certain provisions of the Probate Code, which we will quote in this connection. Before doing so, however, we will quote another passage from Woerner, Vol. 2, p. 1185:

"In view of the ultimate liability of the estate for the disbursements made in its behalf by the executor or administrator, and of the duty incumbent upon the probate court to pass upon the question of the reasonableness of the charges, as well as of the liability of the estate, it would seem that original jurisdiction to adjudicate between executors or administrators and their creditors for services in respect of the estate should, on principle, be vested in the probate courts, to avoid circuity of action and unnecessary costs and delay, and there seems to be legislative and judicial tendency in that direction, particularly in the western states."

The cases cited sustain the text.

The sections of the Probate Code referred to are as follows:

"7872. All issues of fact joined in probate and guardianship proceedings must be tried in conformity with the requirements of the Code of Civil Procedure, and in all such proceedings the party affirming is the plaintiff, and the one denying or avoiding is defendant. Judgments therein, on the issue joined, as well as for costs, may be entered and enforced by execution or otherwise by the court as in civil actions."

"7873. If no jury is demanded, the court or judge must try the issues joined. If on written demand a jury is called by either party, and the issues are not sufficiently made up by the written pleadings on file, the court may direct the preparation of more specific pleadings, or, on due notice to the opposite party, may settle and frame the issues to be tried, and submit the same, together with the evidence of each party, to the jury. If the trial of the issues joined requires the examination of an account, the court or judge must try the matter or refer it, and no jury can be called."

As further illustrating the powers of the court in probate proceedings, we quote the following section from the same Code:

"7558. The district and Supreme Courts and the judges thereof sitting in probate and guardianship matters shall exercise all such powers, consistent with the provisions of this title, as are or may be conferred upon those courts or judges, respectively, in other proceedings; and, except as otherwise provided in this title, the provisions of the Code of Civil Procedure shall be applicable to and constitute the rules of practice in probate and guardianship proceedings."

. This court has had occasion, in several cases arising in probate proceedings, to pass upon questions somewhat analogous to the question under review. These cases will be referred to before concluding our opinion.

In support of the views expressed by Woerner, supra, in the excerpt last quoted, appellant cites the following cases which, in many respects, bear close analogy to the question: *McCoy* v. *Lane*, 66 Neb. 847, 92 N. W. 1010; *Hazlett* v. *Moore's Estate*, 89 Neb. 372, 131 N. W. 589. It is regrettable that we cannot quote copiously from the opinions in those cases without occupying more space than is deemed advisable. The syllabus in each of the cases states the facts and conclusion sufficiently to enable the reader to note the analogy to the instant case. In the McCoy Case the first four headnotes read:

"(1) A guardian has authority to bind the estate of the ward by a contract for services reasonably necessary to the preservation or management of such estate.

"(2) Where such contract provides that payment for such services shall be made out of the estate of the ward, the fact that the guardian signs it in her individual as well as in her representative capacity does not make her a necessary party, in the former capacity, to an action thereon, where it appears from the contract as a whole that it was not intended to bind the guardian personally.

"(3) A claim for services rendered in pursuance of such contract is within the probate jurisdiction of the county court granting the letters of guardianship, and may be enforced in such court as a claim against the estate of the ward.

"(4)  Where such court acquires jurisdiction to issue the letters of guardianship, and appoints the guardian—the ward residing within the county—it acquires jurisdiction of the parties for all purposes of such matter, and no summons is required to obtain jurisdiction of the parties for the adjudication of claims duly filed against the estate."

In the Hazlett Case the syllabus is as follows:

"Attorneys, who, under employment by executors of a will, render necessary services beneficial to the testator's estate in the settlement thereof, may, in a proper case, file, with the county court an itemized bill for their compensation, and the county court has authority to allow a reasonable amount for that purpose as a claim against the estate, where those in control of it refuse to pay the claim and object to any allowance therefor."

In the state of Nebraska, under the Constitution and statutes of the state, the county court, in the settlement of estates of decedents, has the powers of a court of chancery. See *Hazlett Case,* 131 N. W. at page 591 or 89 Neb. at page 376.  In this state the district court is a court of general jurisdiction.  It exercises probate powers, which, in most jurisdictions of the country, are exercised separately by another court.  The jurisdiction of our district courts is lucidly explained by Mr. Justice Frick in the case of *Weyant* v. *Utah. Sav. & Trust Co.,* 54 Utah, 181, 182 P. 189, 9 A. L. R. 1119.  Counsel for appellant quote from the opinion the following language, found on pages 203, 204 (182 P. 198).

"There is, however, no such court as a probate court in this state. The only courts having general—we may say universal—original jurisdiction are the district courts, all of which are created by our Constitution. Upon those courts in the language of article 8, section 7, of our Constitution, is conferred 'original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law.' Neither the Constitution nor the laws of this state prohibit those courts from exercising original jurisdiction to any extent. * * *

"The district courts of this state are therefore invested with jurisdiction in probate matters precisely the same as they are invested with all other civil and criminal jurisdiction. They transact probate business as they do all other civil business. True, in administering estates they follow the established law and rules of procedure applicable to those matters, the same as they follow the established law and rules

of procedure applicable to so-called equity or law cases. Moreover, our Constitution provides that 'there shall be but one form of action, and law and equity may be administered in the same action.' We therefore have no courts which are known as probate courts, or as law courts, or as equity courts; but we have courts possessed of general original jurisdiction, which are known as district courts. The district courts of this state, therefore, administer the estates of decedents as a part of their original jurisdiction, the same as they hear and enter judgments on promissory notes, or enter decrees in equity, foreclosing mortgages or quieting titles."

Appellant also cites *In re Hansen's Guardianship,* (Utah) 247 P. 481, in which the powers and jurisdiction of our district courts in all matters, both civil and criminal, are again affirmed.

In the case of *In re Reiser's Estate,* 57 Utah, 434, 195 P. 317, the jurisdiction of the district court in a probate proceeding was challenged by the administratrix of an estate, who claimed that the matter in controversy had not been theretofore adjudicated. The facts were that Henry Reiser died testate in 1904, leaving quite a large estate. Three executors were appointed, among whom was the son of the deceased. In the course of time, it appeared that the son who managed the estate and did practically all of the business was short in his account with the estate some $19,000. For this and other reasons, the executors, on petition, were either removed or resigned. Other executors were appointed and in their accounts filed from time to time, with notice to all parties interested in the estate, the shortage above referred to appeared as a charge against the son. In the meantime the son had died, his estate was administered upon by his widow as executrix, and the shortage against her husband, with notice to her, was continued in the accounts filed by the executors of the Henry Reiser Estate. She never made any answer thereto or in any manner contested the same. Finally, a petition for distribution was filed both by the executors and heirs of the Henry Reiser Estate, in which the shortage of the former executor was made to appear with the prayer that his share of

the estate be retained as an offset against his shortage. To this petition the executrix of the defaulting executor filed a demurrer, alleging that the court was without jurisdiction and that the facts were insufficient to entitle petitioners to the relief demanded. The demurrer was overruled. She then filed an answer denying the indebtedness and alleging that no accounting had ever been had or requested. The district court in the exercise of probate powers heard the cause and determined the controversy in favor of the petitioners. The executrix appealed to this court, and, among other questions presented, contended that the claim had never been admitted or adjudicated. In discussing this contention, counsel for appellant in that case says in his brief:

"There is a proper manner in which to determine disputed debts and that is not in course of probate proceedings nor upon distribution."

This occurs in appellant's brief, but not in the opinion of the court. It indicates that appellant's contention in that case was the same as respondent's contention here. In disposing of that contention, this court held that the filing of accounts from time to time showing the shortage, even with notice to the executrix, did not amount to an adjudication of the claim. It held, however, that the proceedings in that case in the court below exercising probate powers was an adjudication within the jurisdiction of the court because the pleadings were sufficient to confer jurisdiction.

In the course of the opinion, the court, at page 441 (195 P. 320), says:

"Without denying the power of the district court to hear and determine a question of this kind, even when exercising the powers of a probate court, we feel compelled to hold that there should be some appropriate pleading to invoke the jurisdiction and power of the court."

The court then quotes the following excerpt from *In re Tripp's Estate*, 51 Utah, 359, 170 P. 975:

"We are not prepared to say, and do not decide that, under our state Constitution and statutes, the district court, sitting as a court of pro-

bate, has not the power and jurisdiction to hear and determine all matters involving partnership relations between the surviving and deceased partner. However, we are convinced beyond any doubt that in the matter at bar the court had no jurisdiction, in view of the foregoing statute, to order or decree a final settlement of the partnership affairs as between the surviving partner and the deceased partner's estate without any accounting with the administrators and without the necessary facts being presented to the court in a proper manner. As pointed out, no accounting or settlement of partnership affairs was had by the surviving partner with the administrators in compliance with the foregoing statute, nor were there any proper pleadings before the court whereby the equity powers of the district court, sitting as a court of probate, or otherwise, might be legally invoked, and proper findings on which any valid decree of a final settlement of partnership affairs could be predicated."

The opinion in the Reiser's Estate Case then continues:

"There seems to be no reason, under our Constitution and laws, why a district court in a probate proceeding may not when necessary to a due administration of an estate exercise powers which ordinarily pertain to equity jurisdiction so that the business may proceed without interruption or unnecessary delay."

While the identical question presented here has not been heretofore determined by this court it must be conceded from the legislation and decisions to which we have referred that the tendency is in the direction of disregarding mere technical distinctions relating to the powers of a district court when exercising jurisdiction in probate proceedings.

The Utah cases to which we have referred involved questions of equitable cognizance, and the determination thereof was necessary to a final settlement of the estate. The court has thus far found no substantial reasons for holding that the district courts, in the exercise of probate powers, may not determine such questions, as they arise during the course of administration. It is held, however, that the pleadings in such cases must be such as to invoke the jurisdiction of the court. Section 7873, supra, of the Probate Code contemplates recasting the pleadings when necessary for the trial of such questions as arise under section 7872.

The instant case is also one of equitable cognizance, and there can be no question as to the sufficiency of the pleadings to invoke the equity powers of the court. If it be necessary to recast the pleadings at all, it will only be necessary as to matters of form. That can be done and is only required to be done, when an issue of fact is presented. Sections 7872 and 7873, supra.

The court is of opinion that respondent's interpretation of the jurisdiction and power of the district court in probate proceedings, as contended in his brief, is not justified by any provision of the Constitution or laws of the state. On the other hand, it is our opinion that it was the manifest intention of the Legislature, in enacting the Probate Code, to simplify our judicial procedure so as to avoid unnecessary circuity of actions in administering the estates of decedents.

The judgment is therefore reversed and the cause remanded, with direction to the trial court to overrule respondent's demurrer to the petition and proceed in accordance with this opinion. Appellant to recover costs.

GIDEON, C. J., and FRICK, J., concur.

CHERRY, J.

I concur in the result. The doctrine that claims for services rendered in the administration of the estates of deceased persons, at the instance and request of administrators, are merely claims against the administrator individually, and cannot be made charges upon the estate of the deceased except indirectly through the administrator, is an artificial doctrine, resting on no substantial basis. Its practical application often results in delay, circuity of action, uncertainty, and injustice. Many courts have rejected it. *Brandenburg* v. *Dante*, 49 App. D. C. 141, 261 F. 1021, and cases cited. I think the doctrine inconsistent with the Probate Code of this state. Comp. Laws Utah 1917, §§ 7643, 7644, and 7666, very clearly imply that expenses of administration are not only charges but preferred charges against the estate. The matter of the lien asserted by petitioner is

immaterial. If the petitioner has a claim at all against the estate, it is for expenses of administration, which, by the statute, has preference in the order of payment.

With respect to the question of the jurisdiction of the district court in the probate proceeding to entertain the petition and adjudicate the claim, there is a conflict of authority. There is very respectable authority for the proposition that claims for attorney's fees for services performed in the course of administration may be allowed by the probate court and ordered paid directly to the attorney performing the service. In addition to *Hazlett* v. *Moore,* 89 Neb. 372, 131 N. W. 589, cited in the majority opinion, see *U. S. P. & G. Co.* v. *People,* 44 Colo. 557, 98 P. 828; *People* v. *El Paso Co. Ct.,* 74 Colo. 123, 219 P. 215; *In re McLure's Estate,* 68 Mont. 556, 220 P. 527; *Knight* v. *Hamaker,* 40 Or. 424, 67 P. 107. In California, the proceeding is authorized by statute. Kerr's Cyc. Codes, Cal. 1616. This form of proceeding is simple, direct, and sensible, and ought to have judicial sanction, especially since this court is not committed to the contrary. This does not mean that the scope of probate proceedings may be enlarged to include the adjudication of disputes relating to contracts with or claims against the deceased or to controversies over the title or possession of estate property. Because the matter in hand relates to expenses of administration, a subject directly connected with and arising out of the proceedings over which the probate court has control, and which it must adjudicate in any event with the administrator, it becomes a peculiar and appropriate subject of cognizance in the probate proceeding, for which reasons I approve the reversal of the judgment.

STRAUP, J., concurs in the views expressed by CHERRY, J.